## JOHN TENEICK *ads.* WILLIAM FLAGG.

1. Where land is sold, a part of the purchase money paid, and a deed executed and placed in the hands of a third person to be delivered to the grantee, and the balance of the purchase money to be paid on the happening of a certain event, if the grantor die before the event happens the title to the land does not vest in the purchaser, but descends to the heirs of the vendor subject to the equitable rights of the purchaser.

2. If the heirs of the vendor afterwards make a deed to the purchaser, and the purchase money is paid over to the vendor's administrator, such administrator will not hold the money as a part of the estate of the vendor, but will hold it as an individual for the heirs as their property, and an action will lie against him to recover it.

3. The deed given by the heirs is an absolute title for the land ; it is not

Teneick ads. Flagg.

a deed of confirmation, because there had been no previous deed delivered nor estate created to be confirmed.

4. Where one of the heirs in such case is a married woman, and an action is brought against the person receiving the money to recover her share, previous to the act for the better securing the property of married women, passed March 25th, 1852, the action might be in the name of the husband alone; and if the husband died after verdict, and before judgment, the suit would not abate, but might be continued, and judgment entered by the administrator.

5. Whether the judgment in such case enures to the benefit of the husband's estate or goes to the wife, *query*.

On motion for new trial.

The facts in this case sufficiently appear in the opinions delivered.

Argued before Justices OGDEN, HAINES and VAN DYKE.

*A. V. Schenck*, for defendant.

*G. H. Brown*, for plaintiff.

OGDEN, J.   The foundation of this action was money alleged to have been received by John and Andrew Teneick about the 20th of December, 1849, for the use of William Flagg, the plaintiff.

A brief recital of the facts of the case is necessary for properly understanding the objections which have been made to the charge of the justice before whom the issue was tried. The plaintiff was the husband of Hannah Teneick, one of the daughters of Attie Teneick.

On the 16th of October, 1848, Attie Teneick signed and sealed a deed of conveyance of certain real estate to James Buckalew for the consideration of $3500.   The deed was duly acknowledged by her on the 27th of October, and was placed in the hands of a third person, to be delivered by him to the grantee at a future day, when the price was to be paid for the purchase.   The grantor died before the sale and purchase were consummated, and her two sons,

John and Andrew, administered upon her estate.    Subsequent
to her death, and on the 20th of September, 1849, the plain-
tiff, with his wife and the other heirs-at-law of Attie Teneick,
joined in a deed of bargain and sale for the same property
to Mr. Buckalew for the same consideration, which deed
contained an express ratification and confirmation of the deed
that had been executed by their ancestor.    Both deeds were
delivered to the grantee, and on the 4th of December, 1849,
were lodged in the clerk's office of Middlesex county, and
there recorded.    The purchase money was paid in cash by
the grantee to John Teneick and Andrew Teneick.    This
action was commenced prior to the first of July, 1851, for
the recovery of one-seventh part of the purchase money, it
being the share which the wife of the plaintiff had in her
mother's estate.

The jury rendered a verdict against John, as survivor of
Andrew Teneick, for the amount of the seventh part, with
interest from the time that the money was paid by Mr. Buck-
alew.

Two principal points of objection have been urged
against the validity of the verdict—one, that the proceeds
of the sale of the land should have been considered as
personal assets in the hands of the administrators; and
hence that the decree of the Orphans' Court, made on the
18th of June, 1850, upon the final account of the admin-
istrators, which actually embraced those moneys, should
settle the amount then due as a distributive share; the
other, that the proofs showed that the action could not be
lawfully maintained in the name of the husband alone as
plaintiff.

The first objection will be disposed of by a solution of
the question whether the title to the land had passed out
of the intestate before her death, so that her personal rep-
resentatives could have maintained an action for the
purchase money against the vendee.    The proofs conclu-
sively show that the deed was not to be delivered until a
suit then pending against the grantor respecting the title

to the property should be terminated, and that the suit was abated by her death. Of consequence she died seized of the inheritance, and it descended to her heirs-at-law. The justice, therefore, was correct in his instructions to the jury, that the proceeds of the sale were not assets to. be administered by the personal representatives *as such*, but belonged to the grantors, as heirs-at-law of Mrs. Teneick; and in that view of the case, that. the plaintiff was entitled to recover the seventh part of such proceeds from the defendant individually, with interest from the time that he and his brother received the same.

In the next place, should Mrs. Flagg have been made a co-plaintiff?

The right of action for this share accrued after the death of Mrs. Teneick, to wit, on the sale of the property by her heirs-at-law, and the payment of the proceeds to the sons. Although there has been much confusion and contradiction in the books upon this point and on the doctrine of survivorship, by improperly making one the criterion of the other, yet the law is clearly and correctly laid down by Toller, in page 219 of his work on executors. The author says, "in respect to such choses in action as vested in the wife before her marriage, the husband must sue jointly with her to recover them. As to such of the wife's choses in action as accrued subsequent to the coverture, he may sue *either* in their joint names or alone at his pleasure. If he join her in action and recover judgment and die, the judgment will survive to her."

He adds, "that it has been asserted by a great authority (referring to *Bond* v. *Simmons*, in 3 *Atkins*,) that even in the case of the husband's suing alone for the wife's debt, and his dying before execution, his wife, and not his executors, shall be entitled."

The single question for this court to settle is, whether the action was right when it was commenced, not whether it would not have been better for the plaintiff to have joined his wife with him, inasmuch as he died between the

verdict and rule, and the verdict in such case would have survived to her. The appropriation of the avails of the judgment, when collected, must be adjudicated in another proceeding. It will by no means follow that the verdict which has been rendered in this case must enure to the benefit of the creditors of the plaintiff.

The contract was made in right of the wife, and there was no judgment in the lifetime of the plaintiff.

The act "for the better securing the property of married women" can have no possible bearing upon the question of proper parties, because it was not passed until the winter after the action was commenced.

I have found no error in the charge given to the jury, and am of opinion that the rule to show cause should be discharged, with costs.

HAINES, J. Attie Teneick, being the owner in fee of certain real estate, contracted to sell it to one James Buckalew, and received upon the contract a payment of one hundred dollars, part of the purchase money. She subsequently signed and sealed a deed of conveyance, and gave it to her agent to deliver. But Buckalew refused to receive it because of an action of ejectment brought for the premises by other parties against Mrs. Teneick, whereupon it was agreed that the agent should hold the deed, to be delivered on the favorable determination of the suit. By the death of Mrs. Teneick the suit was abated, and was never again renewed.

She left heirs-at-law seven children, of which Mrs. Flagg, the wife of William Flagg, the plaintiff, was one.

By the advice of counsel after her death, the heirs, including Mrs. Flagg, together with her husband, joined in executing a deed for the real estate to Buckalew, and on their behalf the purchase money was received by John and Andrew Teneick, who were also administrators of Mrs. Teneick. And they claimed that the purchase mo-

ney was a part of her personal estate, and propose to account for it as such.

On their refusing to pay the money, and the interest upon it, William Flagg, in 1851, commenced this action against them, as individuals, in his own name, to recover the one-seventh part of the purchase money, which he claimed in right of his wife. At the April Term, 1859, of the Somerset circuit, he obtained a verdict for the amount of the share and interest, but before the next term of this court he died; and the suit is continued in the name of his administrators.

The defendant, John Teneick, who has survived his brother Andrew, now seeks to set aside the verdict, and insists, also, that as the case stands no judgment can be lawfully entered upon it.

The fund in question was the proceeds of the sale of real estate, which, on the death of Attie Teneick, in April, 1849, descended to her heirs-at-law, subject to the equitable right of Buckalew to have the same conveyed to him. That equitable right was not enforced by him in a court of equity or in the Orphans' Court under our statute, but it was arranged between the parties by the heirs-at-law joining in a deed of conveyance. That deed recites the agreement of sale and the execution of the deed by Mrs. Teneick, and the fact of its not having been delivered, and professes, on its face, to be a deed of confirmation. But it is not a deed of confirmation; there was no previous deed delivered or title passed, or estate created, to be confirmed. Confirmation is the approbation or assent to an estate already created. It is a conveyance of an estate or right which one hath in lands to another, who has possession or some estate therein, whereby a voidable estate is made sure and unavoidable. It is the strengthening of an estate formerly made which is voidable, although not presently void. 2 *Jacob's L. D.*, title " Confirmation," 19.

The deed of Mrs. Teneick was inoperative and void for

want of delivery. It was delivered in escrow; but the condition or event on which it was to be delivered never happened in her lifetime, and the deed died with her. Confirmation has no operation on a void estate. *Arch. note to* 2 *Bl. C.* 325; *Gilbert's Tenure* 75.

The conveyance by the heirs was consequently of their interest in the real estate, and the purchase money belonged to them as heirs-at-law of their mother, and did not belong to the personal estate, and go through the hands of the administrators to them as next of kin.

It was urged, by the defendant's counsel, that by the contract of sale between Mrs. Teneick and James Buckalew the estate was converted into personalty, and hence that the purchase money went to the administrators to be disposed of in due course of administration. Such is undoubtedly the general rule in equity. 2 *Sugden's Law of Vendors* 291; *Lacon* v. *Bennet*, 7 *Ves.* 436; *Craig* v. *Leslie*, 3 *Wheat R.* 563, 577.

But it is not the rule at law. In equity the contract may be specifically exposed, and the land regarded as that of the purchaser, and held by the vendor in trust for him, while the consideration money is deemed to belong to the vendor, and held in trust for him by the purchaser, and equity enforces these several notional trusts. But at law it is otherwise. The purchaser is there left to his action for damages for the breach of the contract, and must take his relief in money while the title of the land continues in the vendor or his heirs or assigns.

The doctrine of equitable conversion is not applicable to estates at law or to courts of law.

Nor did the proceedings before the Orphans' Court change the character of the fund, either by the action of that court or the refusal of Flagg to file exceptions to the account. That court had no jurisdiction over the product of the real estate, and Flagg objected to its being included in the account. His refusal or neglect to except was no acquiescence But his objection was an express dissent.

The money was received by John and Andrew Teneick as agents of the heirs, and not as administrators of the intestate.

In the share of Mrs. Flagg her husband had a vested interest in part as tenant by the curtesy, and in the residue a qualified interest, a right to have it absolutely on his reducing it to possession during coverture. *Roper on Husband and Wife,* 32 *Law Dict.* 129; *Clancy on Husband and Wife,* 4, &c.

His right to sue for it in a court of law in his own name before the passage of the act respecting the property of married women is well settled, and indeed was partly conceded in the argument. He had begun to enforce that right, and commenced his suit before the passage of that act, and the act could not change those of his rights which were fixed and vested nor intercept the proceeding to render absolute his qualified rights. Having commenced his action, he had a right to pursue it to judgment.

In the case of *Executors of Henry* v. *Dilley,* 1 *Dutcher* 302, the act was held to operate to secure to married women all the personal property in which they had at the time it took effect an exclusive vested interest, but emphasis was laid upon the fact, that Dilley had taken no step to reduce the legacy to possession before the act took effect.

If this be true, Flagg was entitled to recover a verdict for the seventh part of the money and the interest, and had he lived, to have judgment upon the verdict. But it is insisted that at his death the right to the money survived to the wife, and that judgment cannot be entered in the name of his administrators.

This is a question more appropriate to a motion in arrest of judgment than on a motion for a new trial; but it having been discussed, it may not be improper to express an opinion upon it.

Had Flagg brought no action, of course the right of the wife would have survived to her. The question is whether he has done anything to take away the right of

survivorship, and vest the interest in him; whether his having obtained a verdict and a right to judgment was a sufficient reduction of the chose in action into possession.

A husband may reduce such chose in action into possession by a new contract, by the substitution of another obligation for it, or by recovering judgment on the contract. 1 *Parsons on Cont.* 285.

In *Hart* v. *Stephens*, 6 *Queen's B. R.* 937, it is said that any act which clearly shows an intention to make the wife's chose in action his own, as mortgaging, releasing, taking a new security, procuring a judgment upon it, appointing another as agent to collect, who actually collects it, is a sufficient reduction to possession.

The husband in the case of *Executors of Henry* v. *Dilley*, 1 *Dutcher* 302, could not recover, but it was because, at the time the act concerning the property of married women took effect, he had done nothing towards reducing it to possession.

In *Schuyler* v. *Hoyle*, 5 *Johns. Ch. R.* 210, a leading case in New York, Chancellor Kent, after reviewing the case, says: " With respect to a decree, judgment, order or award, in favor of the husband, to which he is entitled in right of his wife, it seems to be a settled rule that if he sues alone and recovers, the property vests in him by the recovery, and is so changed as to take away the right of survivorship in the wife; but if the suit is in their joint names, the wife, as survivor, would take the benefit of the recovery.

The reason given for the distinction in the effects of a judgment in the name of a husband alone and of a judgment in their joint names is, that the husband, by bringing the action in his own name, signifies his disagreement to his wife's interest, and his intention that it shall not survive to her; but where it is brought in both their names it shows an intention not to alter the property.

Hence, in *Wildman* v. *Wildman*, 9 *Vesey* 176, the wife, during coverture, became entitled to a distributive share of personal estate, consisting partly of public stock. The

administrator transferred her part into her own name, she and her husband transferred some part of it; the remainder stood in her name at the time of his death; and it was determined that he having exerted no power to reduce it into possession the property did not vest in him so as to prevent the wife taking it as survivor.

So where the husband took possession of the property of his wife as executor and trustee, and not as husband, it was not considered sufficiently reduced to possession to prevent its surviving to her on his death. *Blake* v. *Hale*, 12 *Vesey* 497.

And it was also ruled in *Hale* v. *Tomlinson*, 16 *Vesey* 413, that a transfer of the wife's stock to the husband merely as trustee was not a reduction into possession.

So in Schuyler *v.* Hoyle, the property of the wife received by the administrator, under authority executed by the husband and wife, and not paid over to the agent of the husband, survived to the wife, but that what was paid over to his agent did not survive to her. In all these cases there was an absence of any intention expressed by the husband to prevent the property surviving to the wife.

In the case before us there was such an intention expressed, and an action to recover the property in his own name actually commenced by William Flagg before the passage of the act.

A further question is made, whether having so expressed his intention and prosecuted his suit to a verdict, that intention is defeated by his death before the entry of the judgment.

The first section of the act (*Nix.* 1) to prevent the abatement of suits and reversal of judgments provides that the action shall not abate on the death of a party after interlocutory judgment, provided it could have been originally prosecuted by or against his executor or administrator. But as this action could not have been prosecuted originally by the executor or administrator of William Flagg, this section does not aid the case.

Teneick ads. Flagg.

The tenth section is more comprehensive, and provides that in all actions, real, personal, or mixed, the death of either party between the verdict and the judgment shall not be alleged for error, so as the judgment be entered within two terms after such verdict. This makes no exception of those actions which could not have been originally commenced by or against executors or administrators. It is general, and applies to actions on contracts and to actions personal, which usually die with the party as well, and it is consequently applicable to the present case.

The verdict, it is true, was rendered in April, 1859, and more than two terms have passed since then.

But it is no fault of the administrator that judgment final was not entered before. A rule to show cause why the verdict should not be set aside was taken on the coming in of the *postea* at the next term after the verdict was recorded, and time has since been taken for the preparation of the argument and for the court to advise.

In *Concover* v. *Wayne*, 1 *Strange* 425, (1 *Smith's Leading Cases* 146) the death of a party had occurred pending the argument and time taken to advise, yet the court ordered judgment to be entered *nunc pro tunc*. It was so declared on the principle, that the act of the court should do injury to no one; the delay was the act of the court, and the parties therefore should not suffer by it.

In *Tooker* v. *The Duke of Beaufort*, 1 *Burr.* 146, the defendant died pending a rule to show cause why the verdict should not be set aside, and time was taken by the court to advise, yet judgment was entered *nunc pro tunc*.

In *Trelawney* v. *Bishop of Winchester*, 1 *Burr.* 226, the same rule was recognized and acted upon.

I am of the opinion that the rule to show cause should be vacated, and that judgment be entered on the verdict as of the term to which the *postea* was returned, with costs of suit to be taxed.

VAN DYKE, J., dissented.