GEORGE CROSS, EXECUTOR OF THE ESTATE OF MARGA-
RET B. CROSS, DECEASED, PLAINTIFF-APPELLANT, v.
TRANSFER INHERITANCE TAX BUREAU, DIVISION OF
TAXATION, STATE OF NEW JERSEY, DEFENDANT-RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1969—Decided May 7, 1969.

Before Judges GOLDMANN, KOLOVSKY and CARTON.

*Mr. Robert H. Otten* argued the cause for appellant (*Messrs. Crowell, Crowell & Otten,* attorneys).

*Mr. T. Robert Zochowski,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

CARTON, J. A. D.   Plaintiff, executor of the estate of his late wife Margaret B. Cross, challenges a final determination of the New Jersey Transfer Inheritance Tax Bureau, directing an assessment, pursuant to *N. J. S. A.* 54:34–1(*f*), on a one-half interest in two purchase money mortgages. Plaintiff has paid under protest the amount of the assessment of $4,661.06 and interest, accrued at 10% per annum, amounting to $1,154.40.

Mrs. Cross died in 1965. In the transfer inheritance tax return for her estate the executor listed two mortgages, both held jointly in the names of decedent and her husband, on properties known as Longbridge Farm and Lloyd Farm. (Two joint bank accounts were also declared but are not involved in this appeal.) Although the executor attributed no market value to the decedent's interest in the mortgages, the

Bureau disagreed and determined market values of $104,333-.29 and $58,629.40 for the Longbridge Farm and Lloyd Farm mortgages, respectively.

As in the case of all other property held under joint tenancy, decedent's interest in these mortgages was subject to tax under the Transfer Inheritance Tax Act unless plaintiff, as surviving joint tenant, brought himself within the terms of the statutory exception by showing "to the satisfaction of the Director" that his wife's one-half interest "originally belonged to him * * * and never * * * belonged to the decedent." *N. J. S. A.* 54:34–1(*f*). We hold that plaintiff failed to do so and consequently the mortgages were properly included in the decedent's estate for tax purposes.

In 1948 and 1958 title to the Longbridge Farm and Lloyd Farm properties, respectively, vested in Mr. and Mrs. Cross as tenants by the entirety. In 1963 they sold these properties for $497,500, receiving 29% of the consideration in cash and the balance in the form of two promissory notes, payable to both of them. These notes were secured by purchase money mortgages in which the Crosses were both named as mortgagees.

By virtue of *N. J. S. A.* 46:2D–1 the Crosses held title to the mortgages as joint tenants:

"When any mortgage, covering real estate or chattels or both, shall hereafter be made and executed to, or assigned to, any husband and wife, such mortgage shall be held by such husband and wife as joint tenants and not as tenants in common, both as to the legal estate and the beneficial interest or debt thereby secured, unless otherwise therein provided."

It is not argued that the parties "otherwise provided" so as to create a tenancy in common when the 1963 sale took place.[1] We observe, parenthetically, that our courts have held

---

[1] It may be assumed, for purposes of this appeal, that the accompanying notes, although ordinarily treated as evidencing tenancies in common (*N. J. S.* 12A:3–110, Comment 1), exhibit the characteristics of the mortgages they accompany, and should therefore be considered as held under joint tenancy.

that tenancies by the entirety may not exist in personalty. *Central Trust Co. v. Street,* 95 *N. J. Eq.* 278 (*E. & A.* 1923).

Consequently, it is clear that the two mortgages come within the purview of *N. J. S. A.* 54:34–1(*f*) dealing with taxable transfers unless they are brought within the exception provided therein :

> "The right of the surviving joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of real or personal property held in the joint names of two or more persons * * * shall upon the death of one of such persons, be deemed a transfer taxable in the same manner as though such property had belonged absolutely to the deceased joint tenant * * * and had been devised or bequeathed by his will to the surviving joint tenant or joint tenants, person or persons, *excepting therefrom such part of the property as such survivor or survivors may prove to the satisfaction of the Director of the Division of Taxation to have originally belonged to him or them and never to have belonged to the* decedent. (Emphasis added)

At the outset, we observe that the statute describes the interest subject to the tax as the right of the surviving joint tenant "to the immediate ownership or possession and enjoyment of real or personal *property* held in the joint names of two or more persons." (Emphasis added) Again, the excepting clause refers to "such part of the *property* as such survivor or survivors may prove * * * to have originally belonged to him or them and never to have belonged to the decedent." (Emphasis added)

Applying the statutory language to the present case, it is apparent that the notes and mortgages themselves must be considered as the "property" involved and the exception is granted only for "such part of the *property*," *i. e.,* the notes and mortgages, as the survivor is able to show originally belonged to him and never belonged to the decedent. Since Mrs. Cross, at the time of her death, owned a one-half interest jointly with her husband in the notes and mortgages and Mr. Cross never owned her share of them, it must be clear, from a literal standpoint at least, that there is no

showing plaintiff is entitled to the benefit of the statutory exception.

Plaintiff argues, nevertheless, that these joint tenancies in the mortgages retained their essential character as tenancies by the entirety after the conveyance and sale of the two parcels in 1963, and therefore were not subject to taxation under *N. J. S. A.* 54:34–1(*f*). See *Ten Eyck v. Walsh,* 139 *N. J. Eq.* 533 (*Prerog.* 1947). This argument is fallacious.

The result of the execution of the contract of sale was to effectuate an equitable conversion of the sellers' interest in the realty. The effect of the deed delivered in accordance with the terms of the contract was to vest legal as well as equitable title in the purchasers. See *Butterer v. Santoro,* 24 *N. J. Super.* 361 (*Ch. Div.* 1953). The sellers' interest in the real property was replaced by the consideration for the sale, comprising the cash payment and the two mortgages and the respective notes. The former tenancies by the entirety were thereby terminated. By operation of *N. J. S. A.* 46:2D–1, the mortgages and notes, which they in part replaced, effectively converted the property interests into joint tenancies.

As a result of this legal transformation, the nature and character of decedent's interest in these farms was substantially altered. 2, *American Law of Property* 27 (1952) distinguishes an interest held by the entirety and one held by joint tenancy in the following manner:

"The estate in entirety differs from the joint tenancy in that the tenants in entirety have no individual interests which they can convey so as to break the unities and defeat survivorship. They are not seized *pur my et pur tout,* as are joint tenants, but only *pur my.* Thus, neither tenant in entirety can defeat or in any way affect the right of survivorship of the other."

See generally, *King v. Greene,* 30 *N. J.* 395 (1959).

It is clear that the decedent's executor could have severed the joint tenancy and compelled partition of the securities, thereby destroying the joint estate and acquiring a one-half

interest free and clear of any survivorship rights in either of the former co-owners. See *N. J. S.* 2A:56–1 *et seq.*; *Martin v. Martin,* 106 *N. J. Eq.* 258 (*Ch. Div.* 1930). *Cf. Central Trust Co. v. Street,* 95 *N. J. Eq.* 278 (*E. & A.* 1923). No such partition, with its attendant power of assertion of absolute dominion and control over the *res,* would be available in the case of a tenancy by the entirety. See *N. J. S.* 2A:56–1; *Eberle v. Somonek,* 24 *N. J. Super.* 366 (*Ch. Div.* 1953).

In addition, decedent's actual interest in the underlying real property was radically changed, in substance as well as form, as a result of the sale. As a tenant by the entirety, decedent possessed an interest in realty and was entitled to share in the possession, use and enjoyment of the property, at least during the joint lives of the spouses. See *King v. Greene,* 30 *N. J.* 395 (1959). As a result of the ensuing conversion decedent became entitled to an interest in obligations calling for the payment of money according to certain terms and conditions. Her interest in the underlying property, now represented by the two purchase money mortgages, was reduced to the status of a mere security interest accompanying the basic debt evidenced by the promissory notes.

Consequently, from neither a legal standpoint nor from a practical one, can it be said that her interest as a tenant by the entirety in these farms was the same as her interest as joint tenant of the note and accompanying mortgages. Plaintiff has thus failed to demonstrate that decedent's one-half interest in the property held jointly with him "originally belonged to him."

Furthermore, he has not met the additional burden cast upon him by the statute of showing the property "never belonged to the decedent." This is so even if we accept as correct the executor's argument that decedent's half interest in the mortgages and notes should be deemed to be substantially the same as her interest in the farms themselves. As a result of the two conveyances in 1948 and 1958, title vested in plaintiff and decedent as tenants by the entirety.

Decedent thus acquired an undivided one-half interest in these properties. That interest belonged to her. No consideration was necessary to make the transfer enforceable and irrevocable. Delivery of the respective deeds was sufficient. See *Cockrell v. McKenna*, 103 *N. J. L.* 166 (*E. & A.* 1926). See generally, 3 *American Law of Property*, § 12.43 (1952).

We also find that the 10% interest charge imposed for the delay in payment of the tax was proper. The statute so required. *N. J. S. A.* 54:35–3. *Darr v. Kervick*, 31 *N. J.* 476, 488 (1960).

Accordingly, the determination of the Transfer Inheritance Tax Bureau is affirmed.