147 N.J. Super. 477 (1977)
371 A.2d 735
IN THE MATTER OF THE ESTATE OF HORACE G. HOUGHTON, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 1976.
Decided January 31, 1977.
*478 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Louis Bort, attorney for appellant.
Mr. William F. Hyland, Attorney General, attorney for respondent (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Martin L. Wheelwright, Deputy Attorney General, on the brief).
*479 The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This is an appeal from a determination of the Transfer Inheritance Tax Bureau in the Division of Taxation, Department of the Treasury, that certain real property owned by decedent and his wife as tenants by the entirety, and under contract of sale by them at the date of his death, was subject to inheritance tax to the extent of one-half of the proceeds of the sale thereof less the amount deposited by them toward the purchase of a new residence, that determination being based upon the doctrine of equitable conversion pursuant to N.J.A.C. 18: 26-5.4(a) promulgated by the Director of the Division.
On February 24, 1975 decedent and his wife entered into a contract to sell their residence in the Borough of Brielle, Monmouth County, which they held as tenants by the entirety. At about the same time they entered into an agreement for the purchase of a condominium in a retirement community. Horace Houghton died March 17, 1975 and neither transaction was completed before his death.
The Transfer Inheritance Tax Bureau (Bureau) determined that one-half the proceeds of the Brielle sale were includible in decedent's estate for inheritance tax purposes. Credit was allowed to the estate for the sum deposited on the retirement community purchase. The Bureau's decision resulted in the payment under protest of $907.05 of additional inheritance tax.
The Bureau based its imposition of tax upon N.J.A.C. 18:26-5.4. That provision of the Administrative Code, adopted August 13, 1973, reads in pertinent part:
(a) For purposes of the transfer inheritance tax laws of this State, the doctrine of equitable conversion will be applied in all estates of New Jersey decedents which involve realty situate in New Jersey.
By virtue of the regulation, the Brielle property formerly held by the Houghtons as tenants by the entirety was converted to personalty taxable in part under the general provisions of N.J.S.A. 54:34-1(a) which impose a tax upon *480 property transferred at death. Property held by spouses as tenants by the entirety has traditionally been exempt from the reach of the statute.
A tenancy by the entirety in realty is an estate held by husband and wife by virtue of title acquired by them jointly after marriage. The tenancy is the creature of common law, created by legal fiction and based wholly on the common law doctrine that husband and wife are one. It is a peculiar and anomalous estate, sui generis in character. Estates by the entirety have no moieties; each owner holds the entirety and each receives per tout et non per my. * * * Upon the death of one of the spouses the entire estate and interest belongs to the other, not by virtue of survivorship but by reason of the title that vested under the original limitation. [Dorf v. Tuscarora Pipe Line Co., Ltd., 48 N.J. Super. 26, 32 (App. Div. 1957)]
Absent a transfer there is nothing to tax. Ten Eyck v. Walsh, 139 N.J. Eq. 533 (Prerog. 1947); In re O'Neill, 111 N.J. Eq. 378 (Prerog. 1932).
Decedent's widow, individually and as executrix, contends that the Director of the Division of Taxation (Director) exceeded his authority in promulgating a regulation which would increase the reach of the taxing statute through use of the legal fiction of equitable conversion. Consequently, we are asked to decide whether the doctrine of equitable conversion may properly be applied under circumstances where the sole issue is one of taxation, and, in any event, whether that doctrine, under existing law, can be invoked by the Director by the adoption of an administrative regulation.
The authority of the Director to make and enforce rules and regulations to carry into effect the provisions of the Tax Act is undisputed. N.J.S.A. 54:50-1. However, a rule or regulation so adopted must be within reasonable contemplation of the authority delegated by the enabling statute, and not conflict with it. See Southern Jersey Airways v. Nat. Bk. of Secaucus, 108 N.J. Super. 369, 383 (App. Div. 1970); In re Estate of Lambert, 63 N.J. 448, 458 (1973).
The regulation as it now reads became effective August 13, 1973. Prior to the change it dealt only with cases of *481 deceased New Jersey vendors or vendees of real property located in another state, and deceased nonresident vendors and vendees of real property located in this State. Apparently, the Director intended by the amendment to tax, after August 13, 1973, real property not theretofore subject to inheritance tax. He sought to do this by the application of the doctrine of equitable conversion "in all estates of New Jersey decedents which involve realty situate in New Jersey."
Our courts have regarded the doctrine of equitable conversion as
* * * a mere fiction resting upon the principle that equity regards things which are directed to be done as having actually been performed where nothing has intervened which ought to prevent such a performance. * * * [Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44, 56 (Ch. 1943)]
In N.J. Highway Auth. v. Henry A. Raemsch Coal Co., 40 N.J. Super. 355 (Law Div. 1956), Chief Justice (then Judge) Weintraub rejected the application of the doctrine of equitable conversion when relied on by a municipality as the basis for its claim for real estate taxes to be paid out of the fund deposited with the court in the condemnation proceeding:
* * * That concept [of equitable conversion] was devised to assure justice between the parties to a real property transaction. It is a fiction of law, and, as such, cannot be extended beyond the special purposes which it was created to serve. It does not transmute a fund into real estate so as to subject the fund to taxation as real property. The land remains land and the fund remains personalty insofar as subsequent local taxation is concerned. [at 361]
A footnote to N.J.A.C. 18:26-5.4 states, "This regulation is intended to conform the treatment of real property under contract of sale or purchase at the time of decedent's death with that of adjoining states, (Cf. Estate of Paul, 303 Pa. 330 [154 A. 503], and In re De Steur's [De Steur's] Estate [199 Misc. 777], 99 N.Y. Supp. (2d 39 *482 [739])), and to revoke previous regulations in conflict herewith." Neither of the cited cases deal with an estate by the entirety and, moreover, both cases rejected the doctrine of equitable conversion as a vehicle either for the assessment of, or for exemption from, inheritance taxes.
In Paul[1] the decedent, a resident of Pennsylvania, died seized of real estate in New Jersey and Missouri which he had, in his lifetime, contracted to sell. The contracts were carried out after his death by the delivery of deeds executed by his executrix. The majority of the Pennsylvania Supreme Court held the property not to be subject to tax, saying:
* * * We are asked to disregard the fact of the testator, still holding title to and possession of the lands, and to indulge in the make-believe that the land has been transmuted into something else. We are not prepared to do so. The agreements of sale are not the vital factor. * * * Taxes should be levied upon realities, not upon fictions. * * * [154 A. at 504]
In re De Stuers' Estate, 199 Misc. 777, 99 N.Y.S.2d 739 (Surr. Ct. 1950), involved a nonresident alien who owned an undivided interest in a parcel of improved realty located in New York County which, prior to his death, he had contracted to convey to his co-owner. He died before the closing. The ancillary administrator of his estate contended that when the testator died his New York estate did not consist in any part of real property, urging as a foundation for this contention the doctrine of equitable conversion. He claimed that the execution of the original contract of sale worked a conversion of the real property into intangible property which at the time of testator's death had a tax situs at his domicile. The surrogate rejected the argument, quoting from In The Matter of Baker, 67 Misc. 360, 124 N.Y.S. 827 (Surr. Ct. 1910):
*483 * * * The doctrine of equitable conversion, in its application to a decedent's estate, concerns only those who have come into relations of contract or privity with the decedent or his estate. The fiction of conversion adjusts rights and imposes equities, but it cannot change facts or work inequity. In adopting it the law makes belief that the things which have been arranged to be done have been done, but this amiable pretense must be confined by the impulses which inspire it to the persons in privity with the transaction. There is no equitable need for its extension to others. Strangers have nothing to do with the reason for its being and nothing to do with its operation. In the best defined case of equitable conversion the legal owner of the lands retains as to persons not in equitable relations to himself all the rights and duties which belong to his seisin. [99 N.Y.S.2d at 749]
The conclusion reached by the surrogate was that "as between the estate and the taxing authority, the ownership of the property was vested in the decedent at the moment of his death. To the extent of the parcel in question, the estate at the time of decedent's death consisted of real property situated in this state and is subject to tax under Tax Law, Sec. 249-p." Cf. Heymann v. Viane, 252 N.Y. 159, 169 N.E. 124 (Ct. App. 1929); In re Swift's Estate, 137 N.Y. 77, 32 N.E. 1096 (Ct. App. 1893).
In McCurdy v. McCurdy, 197 Mass. 248, 83 N.E. 881, 882 (Sup. Jud. Ct. 1908), which involved the real property of a New Jersey resident situated in Massachusetts, it was stated, "the law of equitable conversion ought not to be invoked merely to subject property to taxation * * *." In McCurdy the land, rather than being under a contract of sale, was mortgaged to the extent of one half its value. (Massachusetts is a title state.) The taxing authorities sought to tax the entire value of the property undiminished by the outstanding mortgage. While the factual situation somewhat differs, the principle is nonetheless clearly stated:
The Bureau cites Cross v. Transfer-Inher. Tax Bur., 105 N.J. Super. 452 (App. Div. 1969), as authority for its position that "the doctrine of equitable conversion is recognized for tax purposes." We find no support for that argument in *484 Cross. There decedent and her husband, as tenants by the entirety, sold their real estate and, as part of the purchase price, took back two purchase money notes and mortgages in their names jointly. The wife died two years later and her executor, while listing both mortgages in the inheritance tax return, claimed that the joint tenancies in the mortgages retained their essential character as tenancies by the entirety in the realty despite the sale and conveyance of the property, and that, accordingly, the decedent wife had no interest that was taxable. We rejected that contention, holding that the sellers' interest in the real property was replaced by the consideration for the sale consisting, in part, of the two notes and mortgages and that "[t]he former tenancies by the entirety was thereby terminated." 105 N.J. Super. at 456.
Such is not the situation here. The sale of the Brielle property was not consummated before decedent's death and there was no replacement of the real estate by the cash consideration received after his death for the deed. Had there been, then, of course, the cash received would have been reflected in one or more bank accounts or in some other form of investment and would have been subject to tax, as in Cross. In addition, since there was actual conversion in Cross, the concept of equitable conversion was not a consideration necessary to the holding; the case cannot, accordingly, be considered for the proposition that the doctrine will be applied in this State to resolve issues of inheritance taxation.
The doctrine of equitable conversion is thus a fiction and wholly a creation of the equitable jurisprudence, 1 Pomeroy Equity Jurisprudence (4th ed.), 197, § 161. It is not applicable to estates at law. Teneick v. Flagg, 29 N.J.L. 25, 31 (Sup. Ct. 1860); In re McDougal, 49 N.J. Super. 485 (Cty. Ct. 1958), aff'd 55 N.J. Super. 36 (App. Div. 1959), aff'd 29 N.J. 586 (1959). As a consequence, the effect of a contract for the purchase of land is very different at law and in equity. At law the estate remains *485 in the estate of the vendor and the money that of the vendee, while in equity the estate from the signing of the contract is the real property of the vendee: it descends to his heirs, and is devisable by will. The money becomes the property of the vendor. Such a concept created to assure justice between the parties to a real estate transaction should not, in our judgment, be extended beyond the special purposes which it was created to serve.
Accordingly, we are constrained to find that the doctrine of equitable conversion should not be applied to resolution of issues of taxation. In the context of this case, and in light of our case law with respect to tenancies by the entirety, we conclude that the regulation in question exceeds the authority delegated to the Director by the statute under which it was adopted. Contrary to prior law it would tax interests in real property which had hitherto been deemed exempt under proper construction of the statute. Such a change can only be accomplished, if at all, by legislative action, not administrative pronouncement.
The determination of the Bureau is reversed and the proceedings remanded to the Division for further proceedings in accordance with this opinion.
NOTES
[1] 303 Pa. 330, 154 A. 503 (Sup. Ct. 1931), cert. den. 284 U.S. 630, 52 S.Ct. 13, 76 L.Ed. 536 (1931).